**Judy L. COMBS, Individually, and as Executrix of the Estate of Virgil Combs, Appellant,**

v.

**ALBERT KAHN & ASSOCIATES, INC., and Turner Construction Company, Appellees.**

**No. 2004–CA–002178–MR.**

Court of Appeals of Kentucky.

Jan. 6, 2006.

---

Kenneth L. Sales, Joseph D. Satterley, Paul J. Kelley, Louisville, KY, for appellants.

James M. Gary, Russell H. Saunders, Patrick W. Gault, Louisville, KY, for appellee Albert Kahn & Associates, Inc.

Rebecca F. Schupbach, Rania M. Basha, Louisville, KY, for appellee Turner Construction Company.

Before BARBER, MINTON, and TAYLOR, Judges.

## OPINION

MINTON, Judge.

Judy Combs appeals from an opinion and order of the circuit court granting summary judgment in favor of Albert Kahn & Associates, Inc., and Turner Construction Company.[1] The trial court dismissed the Combses' claims against Kahn and Turner on the sole ground that these claims were barred by the applicable statute of limitations. We hold that summary judgment was proper, and we affirm.

The General Electric Appliance Park was built in the 1950s. The buildings contain asbestos insulation in numerous areas and various applications. Virgil Combs worked at the Appliance Park from 1973 through 1999. In January of 2000, he was diagnosed with asbestosis. He alleged that he was exposed to asbestos fibers and asbestos dust from the buildings' deteriorating insulation while he was employed at the Appliance Park. On July 27, 2000, the Combses filed a lawsuit against a number of manufacturers or distributors of products containing asbestos, seeking recovery for Virgil's asbestosis, his increased risk of developing mesothelioma or other types of cancer, and mental suffering due to anxiety caused by this increased risk of cancer.[2]

---

1. Both Virgil Combs and Judy Combs were plaintiffs when the summary judgment was granted. But Virgil died during the pendency of this appeal, and Judy has been substituted as a party for Virgil in her capacity as personal representative of the estate.

2. *See* Compl., ¶ 28 (stating that "... [Virgil] was caused to contract diseases and injuries to his body, lungs, and respiratory system, and develop a significantly increased risk of mesothelioma and other cancers and injuries causing him pain, suffering and mental anguish, some or all of which may be perma-

In March of 2003, Virgil was diagnosed with lung cancer. On April 9, 2003, the Combses moved to amend their complaint to add a claim for lung cancer. As part of this amended complaint, they also sought to add two new defendants, Kahn and Turner. Kahn is the architectural and engineering firm that prepared the specifications for the design of the Appliance Park. Turner is a construction company that served as the general contractor for the building of the Appliance Park from approximately 1951 through 1954. The Combses allege that Kahn and Turner were negligent in specifying the use of asbestos-containing products in the Appliance Park or, alternatively, in not warning the workers at the Appliance Park, such as Virgil, of the risks of asbestos exposure. The language of the amended complaint indicates that the Combses seek to hold all of the defendants, including Kahn and Turner, liable for Virgil's asbestosis, lung cancer, and his severe anxiety related to them.[3] But at oral argument the Combses' counsel conceded that they have no viable claim against Kahn and Turner for Virgil's asbestosis, his increased risk of developing cancer, or his anxiety concerning his increased risk of developing cancer. They seek to hold Kahn and Turner liable only for any claims related to Virgil's lung cancer.

The trial court permitted the Combses to amend their complaint. Kahn and Turner soon filed a motion for summary judgment on the ground that any claims against them were barred by the statute of limitations. The trial court agreed with the movants that the Combses' causes of action for lung cancer against Khan and Turner accrued when Virgil was diagnosed with asbestosis in January of 2000 and that a one-year statute of limitations governed the Combses' claims. Accordingly, the trial court granted summary judgment in favor of Kahn and Turner, dismissing the Combses' claims against them as time-barred. The Combses filed this timely appeal. They assert that the trial court erred in granting summary judgment in favor of Kahn and Turner.

Before discussing the merits of the trial court's grant of summary judgment, we must define the scope of our review. In assessing the propriety of the trial court's grant of summary judgment to Kahn and Turner, we are mindful of the fact that summary judgment was appropriate only if Kahn and Turner showed that the Combses "could not prevail under any circumstances."[4] In ruling on a motion for summary judgment, we must view the evidence in the light most favorable to the non-moving party or parties, who are the Combses in this case.[5] When we review a trial court's decision to grant summary judgment, we must determine whether the trial court correctly found that there were no genuine issues of material fact and that

nent and/or fatal."); Compl., ¶ 29 (stating that "... [Virgil] has undergone great physical pain, mental anguish and shock to his nerves and nervous system and severe anxiety due to the knowledge that he has a significant medical risk of contracting cancer, some or all of which may be permanent or fatal, as a result of his exposure to defendants['] asbestos products.")

3. *See* Am. Compl., ¶ 9(stating that "[Virgil] was caused to contract diseases and injuries to his body system, lungs, and respiratory disorders, including cancer. [Virgil] under-

went great physical pain, mental anguish, shock to his nerves and nervous system and severe anxiety due to his contracting an asbestos related lung cancer as a result of his exposure to Defendants' asbestos products.")

4. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky.1991) (citing *Paintsville Hospital Co. v. Rose*, 683 S.W.2d 255 (Ky.1985)).

5. *Id.*

the moving party was entitled to judgment as a matter of law.[6] Because findings of fact are not involved in the summary judgment process, the trial court's decision is entitled to no deference.[7]

The trial court stated that the case was governed by a one-year statute of limitations but did not specify which one applied. We hold that KRS 413.140(1) is the appropriate statute of limitations for personal injury claims due to asbestos exposure.[8] Personal injury actions governed by KRS 413.140(1) "shall be commenced within one (1) year after the cause of action accrued[.]" The parties seem to agree that a one-year statute of limitations is applicable, but they disagree on when the Combses' causes of action against Kahn and Turner accrued.

The fact that the original complaint filed against the manufacturers and distributors of asbestos products was timely filed does not save any untimely claims brought later against the newly-added defendants, Kahn and Turner, because these claims would not relate back to the original complaint. This is not a case in which Kahn and Turner had such notice of the claims against them so as not to be prejudiced by having these claims relate back to the earlier lawsuit.[9] A new party cannot be brought into a lawsuit by amended complaint when the statute of limitations governing the claim against that party has already expired.[10] If, as Kahn and Turner averred, the limitations period governing the claims against them expired in January 2001, one year after Virgil was diagnosed with asbestosis, these claims cannot relate back to the original complaint filed on July 27, 2000.

The instant case involves alleged injuries or diseases due to exposure to a harmful or toxic substance, asbestos, with a period of latency between the exposure and the development of or diagnosis of the diseases. In *Louisville Trust Co. v. Johns–Manville Products Corp.*,[11] the Supreme Court was faced with a case, like the one before us here, in which the claimant first developed asbestosis and then developed cancer due to asbestos exposure.[12] The Court decided to extend the discovery rule to tort actions for injury resulting from a latent disease caused by exposure to a harmful substance.[13] The following rule was established: " 'A cause of action will not accrue under the discovery rule until the plaintiff discovers or in the exercise of reasonable diligence should have discovered not only that he has been

6. *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App.1996).

7. *Id.*

8. Although the claim against Kahn might be considered a professional service negligence claim, we do not think that KRS 413.245, the statute of limitations for professional service malpractice actions, applies in this situation because of the language of that statute. KRS 413.245 begins as follows: "Notwithstanding any other prescribed limitation of actions which might otherwise appear applicable, except those provided in KRS 413.140, ...." This language suggests that KRS 413.245 is not intended to govern the limitations period for any action that would otherwise be governed by KRS 413.140. Regardless, since the period of limitations for a professional negligence action is also one year, it does not matter for the purposes of this opinion which one-year statute of limitations applies. *See* KRS 413.245.

9. *See* Kentucky Civil Rules of Procedure (CR) 15.03(2).

10. *See id., Reese v. General American Door Co.*, 6 S.W.3d 380, 384 (Ky.App.1998).

11. 580 S.W.2d 497 (Ky.1979).

12. *See id.* at 498.

13. See *id.* at 499.

injured but also that his injury may have been caused by the defendant's conduct.' "[14] No cause of action accrues for mere exposure to a harmful substance, such as asbestos, unless or until the exposure actually causes injury.[15] But once an individual realizes that he has been injured by the tortfeasor, his cause of action accrues, even if he does not yet realize the extent of his injury.[16]

Cases involving exposure to asbestos pose a particular challenge in determining when a cause of action accrues because it is possible for a person to develop more than one disease over the course of time as a result of exposure to the same harmful substance. The Kentucky Supreme Court has explained the relationship between asbestos, asbestosis, and lung cancer as follows:

> Since the discovery of its toxicity, asbestos has been found to be the cause of several impairments, mostly respiratory. Some, such as pleural plaques and thickening, are not debilitating. Others are potentially fatal, such as lung cancer and the rarer mesothelioma. Asbestosis can cause impairment, or ... it can be a milder disease. What is important to note is that these diseases are not causes or prerequisites for each other. One does not flow from the other.[17]

"[A]sbestosis and lung cancer are separate and distinct diseases that both arise from asbestos exposure."[18]

States have been categorized as "one-disease" states or "two-disease" states by the way they treat multiple injuries or recurring injuries from a single exposure to a toxic or harmful substance:

> Because a person may develop more than one injury (or experience a recurrence of an injury) from the same toxic exposure, a particularly difficult issue has been when the cause of action accrues in respect to each subsequent injury. In some states the first manifestation of an injury caused by toxic exposure begins a single statutory period. In these "one-disease" states the plaintiff has only one opportunity to sue for all injuries resulting from the same toxic exposure. He must bring a cause of action within the period of limitations after the development of the first disease or forever lose his right to sue for any injuries resulting from the same toxic exposure. In other jurisdictions, so called "two-disease" states, a new cause of action accrues with each injury discovered. Thus, when a person experiences a non-debilitating injury from toxic exposure he

---

**14.** *Id.* at 501, (quoting *Raymond v. Eli Lilly & Co.*, 117 N.H. 164, 371 A.2d 170, 174 (1977)).

**15.** *Capital Holding Corp. v. Bailey*, 873 S.W.2d 187, 192 (Ky.1994); *Wood v. Wyeth–Ayerst Laboratories*, 82 S.W.3d 849, 852 (Ky. 2002).

**16.** *Caudill v. Arnett*, 481 S.W.2d 668, 669 (Ky.1972) (holding that plaintiff's cause of action for personal injury claim accrued at the time of a bus accident in which he suffered minor injuries; although, he did not learn that he developed chronic pancreatitis as a result of that accident until six years later); *Farmers Bank and Trust Co. of Bardstown v. Rice*, 674 S.W.2d 510, 511 (Ky.1984)

(holding that plaintiff's cause of action for medical negligence in failing to diagnose cancer occurred when she first learned that she had cancer, even though she might not have realized the full extent of her injury until later when she had a recurrence of cancer after a period of remission).

**17.** *Carroll v. Owens–Corning Fiberglas Corp.*, 37 S.W.3d 699, 700–701 (Ky.2000) (citing David E. Lilienfeld, *"The Silence: The Asbestos Industry and Early Occupational Cancer Research: A Case Study,"* 81 Am. J. Pub. Health 791 (1991)).

**18.** *Carroll*, 37 S.W.3d at 700.

does not lose his right to sue if and when another injury later develops.[19]

■ As the Supreme Court acknowledged, "Kentucky has never been a 'two disease' state...."[20] One of the factors weighing against Kentucky courts treating each injury discovered as a separate cause of action is the equitable rule against splitting of causes of action.[21] This rule "requires a party to assert all causes of action which may arise from a single 'transaction' in a single lawsuit, rather than proceeding piecemeal in multiple actions."[22]

■ In *Carroll*, the Supreme Court explained the general rule for handling asbestos-related claims as follows: "Under *Capital Holding Corp.*, suits for asbestos-related claims in Kentucky may be brought only once and may encompass all current or future damages, because a claim made early can take into account damages which may occur in the future."[23] A person with a current injury, such as asbestosis, is also permitted to seek recovery for an increased risk of future complications or disease.[24] Mental distress due to anxiety over this increased risk of future complications or disease is also recoverable.[25]

Kentucky's system requiring a plaintiff to seek recovery for all possible injuries due to asbestos exposure at the first sign of injury is consistent with the "one-dis-ease" state model.[26] The Supreme Court criticized the system followed by Florida, which would allow a plaintiff to recover for asbestosis and fear of developing cancer due to asbestos exposure but would not let him sue for enhanced risk of developing cancer, instead requiring him to file a separate suit if he actually develops cancer due to asbestos exposure.[27] The Court called Florida's rule "unwieldy and unnecessary" under Kentucky law,[28] which allows for a single suit to be brought for asbestosis and for all current or future damages, including an elevated risk of developing cancer and mental distress due to anxiety about this elevated risk of developing cancer.

The Court later recognized that *Capital Holding Corp.* did not address the appropriate procedure to be followed "when the plaintiff is not sufficiently impaired to warrant suing for the earlier illness."[29] This was the situation that the Court had to address in *Carroll*. The Combses rely on *Carroll* as support for their claim that their causes of action against Kahn and Turner did not accrue until Virgil developed lung cancer. To see why the Combses rely on *Carroll* and why their reliance is misplaced, we must summarize the facts and holding of that case.

After being exposed to asbestos through his job for thirty years, James Carroll was

19. 1 Lawrence G. Cetrulo, *Toxic Torts Litigation Guide* § 7:37 (2005) (citations omitted).

20. *Carroll*, 37 S.W.3d at 700.

21. *Capital Holding Corp.*, 873 S.W.2d at 193.

22. *Id.* at 194.

23. *Carroll*, 37 S.W.3d at 701 (citing *Capital Holding Corp.*, 873 S.W.2d at 195).

24. *Davis v. Graviss*, 672 S.W.2d 928, 932 (Ky. 1984); *Capital Holding Corp.*, 873 S.W.2d at 193–195.

25. *Davis*, 672 S.W.2d at 932; *Capital Holding Corp.*, 873 S.W.2d at 193–195.

26. *See* Cetrulo, *supra.*

27. *Capital Holding Corp.*, 873 S.W.2d at 194–195, discussing *Eagle–Picher Industries, Inc. v. Cox*, 481 So.2d 517 (Fla.App.1985).

28. *Capital Holding Corp.*, 873 S.W.2d at 195.

29. *Carroll*, 37 S.W.3d at 701.

diagnosed with "a mild, non-progressive form of asbestosis."[30] He did not file a lawsuit over his asbestosis, presumably because his condition was not disabling. But eight years later, he was diagnosed with lung cancer. Within five months of his diagnosis of lung cancer, Carroll filed suit against an asbestos manufacturer. The question in that case was whether Carroll's cause of action for lung cancer accrued when he was diagnosed with lung cancer or when he was diagnosed with asbestosis. If the cause of action accrued when he was diagnosed with asbestosis, then his lawsuit was untimely because it was filed after the one-year limitations period expired.[31] The Court ultimately held that "the action for cancer accrued on the date of the diagnosis of the cancer, not the diagnosis of asbestosis, which is a separate and distinct disease."[32]

Based on this holding, the Combses assert that their causes of action against Kahn and Turner also accrued when Virgil was diagnosed with lung cancer in March of 2003 rather than when he was diagnosed with asbestosis in January of 2000, in which instance their motion to amend their complaint and add Kahn and Turner as defendants in April of 2003 was timely. But Carroll did not radically change the law of Kentucky, making it a "two-disease" state, as the Appellants seem to suggest.[33] The holding in Carroll is much narrower than that. And the reasoning behind the Court's decision is very fact-specific. Because the facts in the instant case are distinguishable from Carroll in several key respects, the rule established in Carroll does not apply to the instant case.

First, the Supreme Court found that "[w]hen Carroll was diagnosed with asbestosis, he did not necessarily know, nor should he have known that he would also eventually develop lung cancer."[34] Moreover, the Court held that "[o]nly actual knowledge or knowledge of the probability of disease" triggers the running of the statute of limitations under the discovery rule set forth in Louisville Trust Co.[35]

In the instant case, it is clear that the Combses knew that Virgil was at a greater risk of contracting lung cancer due to his exposure to asbestos. They included a claim for Virgil's elevated risk of developing cancer and for mental distress due to anxiety regarding this elevated risk in their initial complaint filed in 2000, several years before Virgil was diagnosed with lung cancer.[36] Thus, unlike Carroll, the Combses "had knowledge of the probability of disease," namely lung cancer, which is sufficient to trigger the running of the statute of limitations for that disease, even before Virgil was actually diagnosed as having lung cancer.

Second, Carroll never filed a lawsuit for his injuries relating to his asbestos exposure before the lawsuit he filed following his lung cancer diagnosis.[37] This removed

**30.** *Id.* at 699.

**31.** *Id.* at 700.

**32.** *Id.* at 703.

**33.** At oral arguments, Combs's counsel conceded that Kentucky was not a "two disease state" and asserted that he was not advocating otherwise. Yet, he continued to assert that the Combses' cause of action for lung cancer against Kahn and Turner accrued after their cause of action accrued against the

other defendants for asbestosis, Virgil's increased risk of cancer, and his anxiety concerning his increased risk of cancer. This is the essence of the "two disease" model.

**34.** *Id.* at 701.

**35.** *Id.*

**36.** *See* n. 1.

**37.** *Carroll,* 37 S.W.3d at 700.

any concerns about violating the equitable rule against splitting causes of action. As the Court explained, "[s]plitting causes of action inherently implies more than one action; nothing is split when only one action is brought." [38]

Unlike Carroll, the Combses filed a lawsuit for asbestosis, elevated risk of cancer, and mental distress due to anxiety over the elevated risk of cancer after Virgil was diagnosed with asbestosis. Then, the Combses sought to amend this complaint approximately three years later by adding new claims for lung cancer and new defendants, Kahn and Turner. In effect, it is as if they filed two lawsuits. This raises a concern about splitting the Combses' causes of action, which was absent in the Carroll case.

For all of these reasons, the instant case is distinguishable from Carroll. And the holding in Carroll, which permitted the plaintiff to sue for lung cancer long after he was diagnosed with asbestosis and long after the one-year limitations period for all potential personal injury claims related to his asbestos exposure would ordinarily have expired, is not applicable to the instant case.

Carroll did not establish Kentucky as a two-disease state. Instead, it merely created a narrow exception to the general rule established in Capital Holding Corp. that a plaintiff must file suit within one year of his first diagnosis of injury or disease resulting from asbestos exposure with this suit encompassing all current and future damages related to that asbestos exposure.[39]

Carroll permits a plaintiff who has only a slight, nondisabling injury from asbestos exposure and has no reason to believe that he is at an elevated risk of suffering from any more serious injury, such as cancer, from his asbestos exposure to wait until he develops a more serious injury before filing a lawsuit. And, in that instance, the statute of limitations for the later injury or disease will start running when the plaintiff is diagnosed with that injury or disease rather than running from the date of diagnosis of the earlier injury or disease.

After Carroll, a plaintiff who has been injured from asbestos exposure must make an election of how to proceed. He may follow the Capital Holding Corp. path: filing suit within one year of diagnosis of his first asbestos-related disease or injury, in which case he must include any and all present and future damages from asbestos exposure or risk losing the right to pursue these damages due to the statute of limitations. Alternatively, if his first asbestos-related injury is non-disabling and he has no reason to believe that he is likely to develop a more serious disease or injury, he may follow the Carroll path: waiting to sue until he develops a more serious asbestos-related disease or injury and then filing within a year of being diagnosed with this more serious disease. But if he follows the latter path, he may risk losing any right to recover for the initial disease or injury. This is because the statute of limitations for this initial disease or injury begins to run immediately upon its diagnosis.

The Combses, having chosen the Capital Holding Corp. path, then tried, belatedly, to add new defendants to their suit by claiming the benefits of the later statute of limitations found by following the Carroll path. But what the Combses seek to do would violate the rule against splitting causes of action and is inconsistent with

38. *Id.*

39. *Id.* at 701, citing *Capital Holding Corp.*, 873 S.W.2d at 195.

Kentucky law regarding latent injuries due to asbestos exposure.

We hold that the Combses' causes of action against Kahn and Turner, whom they sought to add as defendants in their April 9, 2003, motion to amend, were time-barred. The one-year statute of limitations began to run on these claims when Virgil was diagnosed with asbestosis in January of 2000 and not when he was diagnosed with lung cancer.

 In the alternative, the Combses assert that their causes of action against Kahn and Turner did not accrue until July 19, 2002, because they did not know until that date of the involvement Kahn and Turner had in the building of the Appliance Park. Purportedly, they first learned of the roles of Kahn and Turner in a deposition on that date in another case. Even if the Combses did not have actual knowledge of Kahn's and Turner's roles until that date, they have offered no reason why they could not have discovered this information sooner with reasonable diligence. "[T]he discovery rule does not operate to toll the statute of limitations to allow an injured plaintiff to discover the identity of the wrongdoer unless there is fraudulent concealment or a misrepresentation by the defendant of his role in causing the plaintiff's injuries."[40] A person who knows he has been injured has a duty to investigate and discover the identity of the tortfeasor within the statutory time constraints.[41] The Combses have not shown that this information was unavailable or concealed. So we reject the argument that the statute of limitations was tolled until July 19, 2002, because of the discovery rule.

The statute of limitations for the claims that the Combses raised against Kahn and

Turner in the April 9, 2003, motion to amend their complaint expired in January of 2001, one year after Virgil was diagnosed with asbestosis. Because all of the claims against Kahn and Turner were untimely, the trial court properly granted summary judgment in favor of Kahn and Turner. Finding no error, we affirm the trial court's order of summary judgment.

ALL CONCUR.

---

**40.** *McLain v. Dana Corporation,* 16 S.W.3d 320, 326 (Ky.App.1999).

